# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 08-1764

_____

Vonage Holdings Corp.; Vonage    *
Network, Inc.,    *
   *
       Plaintiffs - Appellees,    *
   *
      v.    *
   *
Nebraska Public Service Commission;    *
Rod Johnson, in his official capacity as    *
Commissioner of the Nebraska Public    *
Service Commission; Frank E.    *
Landis, Jr., in his official capacity as    *    Appeal from the United States
Commissioner of the Nebraska Public    *    District Court for the District of
Service Commission; Anne C. Boyle,    *    Nebraska.
in her official capacity as Commissioner *
of the Nebraska Public Service    *
Commission; Tim Schram, in his    *
official capacity as Commissioner of the *
Nebraska Public Service Commission;    *
Gerald L. Vap, in his official capacity    *
as Commissioner of the Nebraska    *
Public Service Commission; Jeffrey L.    *
Pursley, in his official capacity as    *
Director of the Nebraska    *
Telecommunications Infrastructure and    *
Public Safety Department of the Public    *
Service Commission,    *
   *
       Defendants - Appellants.    *

_____

National Association of Regulatory    *
Utility Commissioners; Federal    *

Communications Commission; United *
States of America, *
*
           Amici on behalf of *
           Appellant, *
*
Computer & Communications Industry *
Association; Telecommunications *
Industry Association; Information *
Technology Industry Council; *
Information Technology Association of *
America; Fiber - To - The - Home *
Council; Verizon; Voice on the Net *
Coalition, Inc., *
*
           Amici on Behalf of *
           Appellee. *

_____

Submitted: December 12, 2008
Filed:  May 1, 2009

_____

Before WOLLMAN, BYE, and RILEY, Circuit Judges.

_____

BYE, Circuit Judge.

     The members of the Nebraska Public Service Commission,[1] and the Director of the Telecommunications Infrastructure and Public Safety Department[2] (collectively

_____

[1]Rod Johnson, Frank E. Landis, Jr., Anne C. Boyle, Tim Schram, and Gerald L. Vap.

[2]Jeffrey L. Pursley.

-2-

NPSC),[3] appeal the district court's[4] order enjoining the NPSC's enforcement of the Nebraska Telecommunication Universal Service Fund Act (NUSF), Neb. Rev. Stat. §§ 86-316 to 86-329, requiring nomadic interconnected voice over internet protocol (VoIP) service providers to collect and remit a surcharge for the NUSF. We affirm.

I

Vonage Holdings Corp. and Vonage Network, Inc. (Vonage) provide, among other services, nomadic interconnected VoIP service. VoIP is an internet application used to transmit voice communication over a broadband internet connection. With traditional circuit-switched telephone communications, the end-to-end geographic locations of landline-to-landline telephone communications are known, and the interstate or intrastate nature of the calls is readily determinable. VoIP-to-VoIP communications originate and terminate at IP addresses and are tied to no identifiable geographic location. In VoIP-to-landline or landline-to-VoIP communications, known as "interconnected VoIP service," the geographic location of the landline part of the call can be determined, but the geographic location of the VoIP part of the call can be anywhere the VoIP customer obtains broadband access to the Internet. Thus, the interstate or intrastate nature of VoIP-to-VoIP and interconnected VoIP service cannot be determined by reference to the customer's billing address. Similarly, determining the interstate or intrastate nature of VoIP service cannot be accomplished by reference to the VoIP user's telephone number, because a customer living in one area code may be assigned a telephone number from a different area code.

---

[3]The Nebraska Public Service Commission has been voluntarily dismissed and is no longer a party to this action. For ease of reference, we refer collectively to the remaining defendants as the NPSC.

[4]The Honorable Laurie Smith Camp, United States District Judge for the District of Nebraska.

Finally, interconnected VoIP service may be "nomadic" or "fixed." Nomadic service allows a customer to use the service by connecting to the Internet wherever a broadband connection is available, making the geographic originating point difficult or impossible to determine. Fixed VoIP service, however, originates from a fixed geographic location. For example, cable television companies offer interconnected VoIP service, and the transmissions use the cable running to and from the customer's residence. As a result, the geographic originating point of the communications can be determined and the interstate and intrastate portions of the service are more easily distinguished. This case involves nomadic interconnected VoIP services. The specific issue in the current litigation is whether nomadic interconnected VoIP service providers may be subjected to a state regulation requiring them to collect a universal service fund surcharge.

In 1997, Nebraska enacted the NUSF, authorizing the NPSC to establish a fund to subsidize telecommunication services in high cost and remote areas throughout Nebraska. In 2006, the Federal Communications Commission (FCC) issued an order directing interconnected VoIP service providers to collect a federal universal service fund (USF) surcharge. In 2007, the NPSC followed suit and ordered nomadic interconnected VoIP service providers to collect a NUSF surcharge. Thus, VoIP service providers operating in Nebraska were required to collect a fee on interstate services for the USF, and a fee on intrastate service for the NUSF.

As part of its 2006 order, the FCC recognized the difficulties associated with attempting to divine the interstate and intrastate nature of interconnected VoIP communications. Thus, it established a "safe harbor" provision denoting 64.9 as the percentage of a customer's interconnected VoIP communications determined to be interstate, and to which the USF surcharge applied. See In the Matter of Universal Service Contribution Methodology, 21 F.C.C.R. 7518, 7545 (2006) (extending 47 U.S.C. § 254(d) permissive authority to require interconnected VoIP providers to contribute to the USF), petition for review denied, and vacated in part on other

-4-

grounds, Vonage Holding Corp. v. FCC, 489 F.3d 1232 (D.C. Cir. 2007). VoIP providers, unless they could determine actual interstate versus intrastate traffic, collected and paid into the USF based on the safe harbor provision. In determining intrastate usage for purposes of applying the NUSF, the NPSC simply adopted the remaining 35.1 percent as necessarily reflecting the amount of intrastate nomadic interconnected VoIP usage. Additionally, the NPSC used the customer's billing address as a proxy for where nomadic interconnected VoIP services occurred. In other words, even though there was no way to determine the geographic origin of the communication, 35.1 percent of nomadic interconnected VoIP usage by customers having Nebraska billing addresses was deemed intrastate.

Vonage refused to collect the NUSF surcharge and Director Pursely filed a complaint with the NPSC to enforce the NUSF order. Vonage filed this action seeking 1) a declaration the NUSF was preempted by federal law, and 2) a preliminary injunction prohibiting Nebraska from enforcing the NUSF. Vonage argued, among other things, the NUSF was preempted by 47 U.S.C. § 152(b)'s impossibility exception, which the FCC had relied on to make regulation of VoIP service providers subject only to federal oversight.

The district court held the NUSF was preempted and enjoined its enforcement. Specifically, the court concluded the FCC, in an order resolving a dispute between Vonage and the Minnesota Public Utilities Commission, had concluded nomadic interconnected VoIP services were only subject to regulation by the FCC. See Vonage Preemption Order, 19 FCC Rcd 22404 (Nov. 12, 2004), aff'd sub nom., Minn. Pub. Utils. Comm'n v. FCC, 483 F.3d 570 (8th Cir. 2007) (Vonage Preemption Order). The NPSC now appeals the district court's grant of a preliminary injunction, arguing the court erred in concluding the Vonage Preemption Order preempted all state regulation of nomadic interconnected VoIP service providers. The NPSC argues the NUSF is consistent with and does not conflict with the FCC's imposition of the USF.

## II

We review the district court's grant of a preliminary injunction for abuse of discretion, giving deference to the discretion of the district court. Doe v. South Iron R-1 School Dist., 498 F.3d 878, 880 (8th Cir. 2007). An abuse of discretion occurs if the district court rests its conclusion on clearly erroneous factual findings or if its decision relies on erroneous legal conclusions. In re SDDS, Inc., 97 F.3d 1030, 1040 (8th Cir. 1996). We will not disturb a district court's discretionary decision if it remains within the range of choices available, accounts for all relevant factors, does not rely on any irrelevant factors, and does not constitute a clear error of judgment. Walser v. Toyota Motor Sales, U.S.A., Inc., 43 F.3d 396, 401 (8th Cir. 1994).

> [W]hether a preliminary injunction should issue involves consideration of (1) the threat of irreparable harm to the movant; (2) the state of the balance between this harm and the injury that granting the injunction will inflict on other parties litigant; (3) the probability that movant will succeed on the merits; and (4) the public interest.

Dataphase Sys., Inc. v. C L Systems, Inc., 640 F.2d 109, 114 (8th Cir. 1981).

A.    Probability of Success on the Merits

Taking the factors out of order, the primary issue in this appeal is the district court's application of the third Dataphase factor, i.e., probability of success on the merits. The district court concluded the FCC had preempted all state regulation of nomadic interconnected VoIP service providers under § 152(b)'s impossibility exception. Under the impossibility exception, the FCC may preempt all state regulation of services which would otherwise be subject to dual control if it is impossible or impractical to separate the service's interstate and intrastate components, and the state regulation interferes with valid federal rules or policies. See Minn. Pub. Utils. Comm'n, 483 F.3d at 576. The district court found no evidence showing

Vonage's nomadic interconnected VoIP services could be separated into interstate and intrastate components. Further, relying on <u>Minn. Pub. Utils. Comm'n</u>, the district court concluded the Vonage Preemption Order categorically preempted all state attempts to impose regulations on nomadic interconnected VoIP services.

The NPSC argues the Vonage Preemption Order only preempts "traditional telephone company" regulations, and in applying it to the NUSF the district court interpreted it too broadly. It contends the scope of the order must be limited to the type of regulation Minnesota was seeking to impose, i.e., provision of 911 services. According to the NPSC, the type of regulation at issue in <u>Minn. Pub. Utils. Comm'n</u>, acted as a barrier to entry into the market and clearly conflicted with federal regulations prohibiting states from imposing entry conditions. Conversely, it contends the NUSF is the state counterpart to a complimentary federal regulation – Nebraska seeks to collect a fee on intrastate service while the FCC regulation only reaches interstate service.

Vonage contends the language of the Vonage Preemption Order clearly states the FCC intended to preempt all state regulation of nomadic interconnected VoIP service providers. It concedes the FCC could implement a universal service fund surcharge on both interstate and intrastate VoIP traffic, but argues only the FCC has the authority to impose such an obligation. Further, it contends the potential for conflict and overlap between various states attempting to implement similar regulations will thwart federal objectives.

The Vonage Preemption Order provides:

> In this [Order], we preempt an order of the Minnesota Public Utilities Commission . . . applying its traditional "telephone company" regulations to Vonage's DigitalVoice service, which provides voice over Internet protocol (VoIP) service and other communications capabilities. *We conclude that DigitalVoice cannot be separated into interstate and*

*intrastate communications for compliance with Minnesota's requirements without negating valid federal policies and rules. In so doing, we add to the regulatory certainty we began building with other orders adopted this year regarding VoIP . . . by making clear that this Commission, not the state commissions, has the responsibility and obligation to decide whether certain regulations apply to DigitalVoice and other IP-enabled services having the same capabilities.* For such services, comparable regulations of other states must likewise yield to important federal objectives.

19 FCC Rcd at 22404-05 (emphasis added).

In <u>Minn. Pub. Utils. Comm'n</u>, we interpreted the Vonage Preemption order, holding: "The impossibility exception, if applicable, is dispositive of . . . whether the FCC has authority to preempt state regulation of VoIP services." 483 F.3d at 578. We concluded, as did the FCC, that VoIP services cannot be separated into interstate and intrastate usage. <u>Id.</u> at 578-79. We find nothing in the NPSC's arguments here to alter our earlier conclusion. Because Vonage's nomadic interconnected VoIP service cannot be separated into interstate and intrastate usage, the impossibility exception is determinative.

The impossibility exception further requires a finding the state regulation interferes with valid federal rules or policies. The NPSC argues the NUSF does not interfere with the USF because it only applies to the percentage of usage not encompassed within the FCC's safe harbor provision, i.e., 35.1 percent. Thus, according to the NPSC, the NUSF is consonant with federal regulations.

The district court's rejection of the NPSC's argument was not an abuse of discretion. The Preemption Order states:

In [preempting Minnesota's regulation] . . ., we add to the regulatory certainty we began building with other orders adopted this year regarding VoIP . . . by making clear that *this Commission, not the state*

*commissions, has the responsibility and obligation to decide whether certain regulations apply to DigitalVoice and other IP-enabled services* having the same capabilities.

(Emphasis added).

A reasonable interpretation of this language is the FCC has determined, given the impossibility of distinguishing between interstate and intrastate nomadic interconnected VoIP usage, it must have sole regulatory control. Thus, while a universal service fund surcharge could be assessed for intrastate VoIP services, the FCC has made clear it, and not state commissions, has the responsibility to decide if such regulations will be applied.

Additionally, the NPSC's arguments fail to address the conflict which would arise if states adopted conflicting methods or proxies for determining which VoIP customers are subject to their respective universal service fund surcharges. As noted, a customer's billing address need not correspond to the area code affixed to the customer's telephone number. For example, a customer with a Nebraska billing address may be issued a telephone number with a Missouri area code. Under the NUSF, 35.1 percent of the customer's nomadic interconnected VoIP usage will be subject to a surcharge because Nebraska has chosen billing address as a proxy for where the usage occurred. Assume Missouri also adopts a universal service fund surcharge but chooses area code as its proxy for where usage occurs. The customer will be subject to duplicative surcharges in Nebraska and Missouri. This potential for conflict between state regulations militates in favor of finding preemption.

B.    Remaining Dataphase Factors

The district court analyzed the remaining Dataphase factors and concluded they carried less importance. It concluded the threat of irreparable harm and public interest factors weighed in favor of issuing the injunction, while the balance of harm factor did

not favor either party.  We agree these factors are less important, and affirm the district court's analysis of them.  <u>See</u> 8th Cir. R. 47B.

III

The judgment of the district court is affirmed.[5]

_____

---

[5]Because the district court correctly concluded the FCC has preempted state regulation of nomadic interconnected VoIP service, we do not decide if VoIP is an information service or a telecommunications service.